J. Ricardo BURGOS and Alton H. Maddox, Jr., Plaintiffs,

v.

Francis T. MURPHY, as Presiding Justice of the Appellate Division, First Department; et al., Defendants.

No. 87 Civ. 8151 (MBM).

United States District Court, S.D. New York.

Dec. 21, 1988.

Alton H. Maddox, Jr., Brooklyn, N.Y., for plaintiffs.

Arnold D. Fleischer, Caren S. Brutten, Asst. Attys. Gen., of the State of N.Y., New York City, for defendants.

## MEMORANDUM AND JUDGMENT

MUKASEY, District Judge.

By Opinion and Order dated July 28, 1988, this court granted defendants' motion to dismiss the civil rights complaint herein and to impose sanctions on the ground that the allegations in the complaint were baseless. *Burgos v. Murphy,* 692 F.Supp. 1571 (S.D.N.Y.1988). Plaintiffs have moved pursuant to Fed.R.Civ.P. 60(b) to undo that decision based on newly discovered evidence, and have suggested that the proffered evidence was available to defendants and their counsel who are therefore allegedly guilty of fraud for not disclosing it earlier and should themselves be sanctioned pursuant to Fed.R.Civ.P. 11. The motion is denied and sanctions are imposed

on plaintiff Alton H. Maddox, as set forth below. Familiarity with the court's prior opinion is assumed.

### I.

To the extent relevant here, the complaint charged that Maddox, who is a black attorney, was required to apply for membership on the panel of assigned counsel, referred to as the 18–B panel, in order to represent plaintiff J. Ricardo Burgos at public expense on murder and related charges in Supreme Court, Bronx County, while a white attorney, William Kunstler, was permitted to represent Burgos' codefendant, Larry Davis, at public expense on similar charges without applying for membership on the 18–B panel. The evidence, however, which was available to Maddox when he filed the complaint and thereafter, showed that Kunstler in fact was required to apply for membership on the 18–B panel before he was permitted to represent Davis.

On this motion, Maddox proffers the transcript of a proceeding on December 23, 1986, before a Criminal Court judge, in which an associate of Kunstler's requested and was granted an 18–B appointment to represent Davis. That appointment, Maddox argues, operated irrevocably to designate Kunstler as Davis' 18–B counsel, notwithstanding that Kunstler was required in February 1987 to apply for membership on the 18–B panel before he could represent Davis. Maddox claims this transcript proves that he as a black received treatment different from that given Kunstler, and accordingly that he has a basis to allege discrimination. Along with the transcript, Maddox proffers allegations of fraud against defendants for not disclosing the transcript earlier, and demands sanctions against them and/or their counsel.

The short and dispositive answer to Maddox's current allegations is that the transcript he now offers proves only that in December 1986 a Criminal Court judge, apparently unaware that Kunstler was not a member of the 18–B panel, granted a motion by Kunstler's associate for an 18–B appointment to represent Davis. Notably, no one disclosed to that judge at the time that Kunstler was not a member of the panel. When the case came before Supreme Court Justice Burton R. Roberts, himself a defendant in this action, the error was discovered and Kunstler was made to apply for membership on the 18–B panel and to undertake all the responsibilities of such membership before he could be appointed to represent Davis.

### II.

The legal standard governing this motion, addressed by neither party, is that newly discovered evidence, in addition to having eluded even diligent prior efforts, must be more than merely cumulative. *Westerly Elecs. Corp. v. Walter Kidde & Co.*, 367 F.2d 269, 270 (2d Cir.1966) (*per curiam*). Moreover, to the extent that a party alleges fraud, it must be proved by clear and convincing evidence; the motion cannot be used simply as an attempt to relitigate the merits. *Mastini v. American Tel. & Tel. Co.*, 369 F.2d 378, 379 (2d Cir.1966), *cert. denied*, 387 U.S. 933, 87 S.Ct. 2055, 18 L.Ed.2d 994 (1967); *Walter Kidde & Co.*, 367 F.2d at 270; *Nederlandsche Handel–Maatschappij, N.V. v. Jay Emm, Inc.*, 301 F.2d 114, 115 (2d Cir. 1962).

By that standard, the proffered evidence fails both tests. It does not prove what Maddox claims, and therefore can be considered only cumulative at best. Further, because the evidence has no probative value, it is impossible to find that defendants or their counsel committed fraud in not discovering or disclosing it. Accordingly, plaintiffs' motion must be denied.

### III.

There remains the question of the nature and amount of the sanction to be imposed on Maddox pursuant to the court's initial decision. *Murphy*, 692 F.Supp. at 1579. Defendants' counsel has requested both a monetary sanction, in the form of attorneys' fees, and a non-monetary sanction, in the form of a recommendation of disciplinary action. *See Eastway Constr. Corp. v. City of N.Y.*, 821 F.2d 121, 125 (2d

Cir.) (Pratt, J. dissenting), *cert. denied,* — U.S. —, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

Assistant Attorney General Caren S. Brutten has submitted an affirmation declaring that she spent about 15.75 hours on this matter, that the prevailing rate for private lawyers of her experience is $125 per hour, that the fee sanction therefore should total $1968.75, and that unspecified disbursements for typing, duplicating and correspondence raise the amount of the appropriate award to $2,000. By contrast, Maddox points out, correctly, that the Assistant Attorney General apparently did not maintain complete time records and has not disclosed to what extent her calculation is based on actual records rather than after-the-fact reconstruction. Because defendants moved at the outset for Rule 11 sanctions, it would seem that whatever may be the routine time keeping practices of the Attorney General's office, precise records should have been maintained here.

Further, although again neither party has raised the issue, a lawyer employed by a non-profit office may not recover for her client court-awarded fees at the same rate as a lawyer employed by a private law firm when such a recovery would yield a significant windfall. Rather, a modified cost-based approach should be used. *Cf. New York Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1150–52 (2d Cir.1983) (calculation of fees under 42 U.S.C. § 1988). Further, I believe the court must consider also the quality of the services rendered by victorious counsel, *Nassau–Suffolk Ice Cream, Inc. v. Integrated Resources, Inc.,* 114 F.R.D. 684, 692–93 (S.D. N.Y.1987), including here that defendants' initial motion had to be converted from one for dismissal to one for summary judgment at the court's own behest, and that a good deal of relevant authority went uncited in the briefs of either party. *See Murphy,* 692 F.Supp. at 1574. These considerations are to be balanced against the principle that the underlying purpose of sanctions is punitive. *Oliveri v. Thompson,* 803 F.2d 1265, 1280 (2d Cir.1986). Accordingly, I impose on Maddox a monetary sanction of $1,000, which awards fees to defendants for 10 hours of legal work at $100 per hour.

In connection with the request for a non-monetary sanction in the form of a recommendation of disciplinary action, the Attorney General's office has submitted an affidavit disclosing that the Grievance Committee of the Appellate Division, Second Department has already requested and received copies of relevant records in this case. Accordingly, that requested sanction is moot.

### IV.

For the above reasons, and for the reasons set forth in the court's prior opinion, the complaint is dismissed and Maddox is directed to pay a sanction of $1,000 to the State of New York.

SO ORDERED.